IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JAMES L. TURKLE TRUST,
individually and on behalf of all
others similarly situated,

      Plaintiff,

  v.

WELLS FARGO & COMPANY,

      Defendant.

_____/

No. C 11-6494 CW

ORDER GRANTING
DEFENDANT'S MOTION
TO DISMISS
(Docket No. 26)

Defendant Wells Fargo & Company moves to dismiss the complaint filed by Plaintiff James L. Turkle Trust.  Plaintiff opposes Defendant's motion.  Having considered the papers filed by the parties and their oral arguments at the hearing, the Court GRANTS Defendant's motion to dismiss.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

BACKGROUND

The following facts are taken from Plaintiff's complaint and from certain documents submitted by Defendant, of which the Court takes judicial notice.[1]

Trust preferred securities are a form of preferred stock commonly issued by bank holding companies since 1996 to increase their Tier I regulatory capital amount, in order to meet the Federal Reserve's capital adequacy guidelines.  Compl. ¶¶ 16-17. These securities often have a high interest rate for investors. Id. at ¶ 18.

Plaintiff was a holder of Defendant's Capital Trust X 7.85% Trust Preferred Securities at the time of their redemption on October 3, 2011.  Compl. ¶¶ 13, 29, 38.  The Trust X securities were issued by Wachovia Corporation on November 21, 2007.  Id. at

---

[1] Defendant requests that the Court take judicial notice of certain documents filed with the Securities and Exchange Commission (SEC), some of which are documents whose contents are alleged in the complaint.  See Request for Judicial Notice (RJN). Plaintiff agrees that the Court may take judicial notice of Exhibits One through Eight, which are SEC filings that relate to the securities at issue in the instant case.  "Public records, such as SEC filings, are properly the subject of judicial notice, and routinely considered in deciding a motion to dismiss in a securities case."  In re Extreme Networks, Inc., 573 F. Supp. 2d 1228, 1232 (N.D. Cal. 2008) (citations omitted).  See also Dreiling v. Am. Express Co., 458 F.3d 942, 946 (9th Cir. 2006) ("We review de novo a dismissal under Rule 12(b)(6) . . . and may consider documents referred to in the complaint or any matter subject to judicial notice, such as SEC filings.") (internal citations omitted).  Accordingly, the Court GRANTS Defendant's request as to Exhibits One through Eight.

Plaintiff opposes Defendant's request for judicial notice of Exhibits Nine and Ten, which are SEC filings with excerpts from other banks' contracts.  The Court finds these materials to be immaterial to the resolution of this motion and DENIES Defendant's request as to Exhibits Nine and Ten.

**United States District Court**
For the Northern District of California

¶ 19.  Defendant subsequently merged with Wachovia and agreed to assume all outstanding guarantee obligations of the securities. Id. at ¶ 2.

The Trust X securities have several governing documents, including the Trust Agreement, which was superseded by the Amended and Restated Trust Agreement, and the Base Indenture, which was amended and supplemented by the Fourth Supplemental Indenture. See RJN, Exs. 1, 2, 5.  The offering documents for the securities included the Prospectus, which referred to provisions in both the Indenture and the Trust Agreement.  Prospectus, RJN, Ex. 3.  The parties agree that the Indenture is governed by New York law. Mot. at 10; Opp. at 7 n.4.  See Base Indenture, RJN, Ex. 1 at 23; Fourth Supplemental Indenture, RJN, Ex. 5 at 340.  The parties also agree that the Trust Agreement is governed by Delaware law. Mot. at 16 n.3; Opp. at 17 and n.8.  See RJN, Ex. 2 at 147.

The trust documents gave Defendant the right to redeem all or part of the outstanding securities at any time on or after December 15, 2012, which Plaintiff refers to as the "optional redemption date."  Compl. ¶¶ 3, 22; Fourth Supplemental Indenture, RJN, Ex. 5 at 330.  The Indenture also gave Defendant the option to redeem all, but not some, of the securities upon the occurrence of a "capital treatment event."  Compl. ¶ 23; Fourth Supplemental Indenture, RJN, Ex. 5 at 330.  See also Prospectus, RJN, Ex. 3 at 204, 254.  A capital treatment event is defined in the Indenture as

> the reasonable determination by the Company that, as
> result of the occurrence of any amendment to, or change
> (including any announced prospective change) in, the
> laws (or any rules or regulations thereunder) of the
> United States or any political subdivision thereof or

therein, or as result of any official or administrative pronouncement or action or judicial decision interpreting or applying such laws, rules or regulations, which amendment or change is effective or which pronouncement, action or decision is announced on or after the date of issuance of the Trust Preferred Securities of a Wachovia Trust, there is more than an insubstantial risk that the Company will not be entitled to treat an amount equal to the aggregate Liquidation Amount of such Trust Preferred Securities as 'tier 1 capital' (or the then equivalent thereof) for purposes of the capital adequacy guidelines of the Federal Reserve, as then in effect and applicable to the Company.

Base Indenture, RJN, Ex. 1 at 12.  See also Compl. ¶ 23; Prospectus, RJN, Ex. 3 at 255.  If a capital treatment event occurs, Defendant is entitled to redeem the securities for their face value of twenty-five dollars, plus any interest accrued to the date of redemption.  Compl. ¶ 24.

On July 21, 2010, the President signed into law the Dodd-Frank Wall Street Reform and Consumer Protection Act, including the Collins Amendment.  Id. at ¶¶ 25-26.  One provision of the Collins Amendment was to disallow the treatment of trust preferred securities as Tier I capital.  Id. at ¶ 26.  For trust preferred securities issued before May 19, 2010 by large bank holding companies, the new requirements will be phased in incrementally from January 1, 2013 through January 1, 2016.  Id. Before January 1, 2013, bank holding companies will be allowed to treat all of these outstanding trust preferred securities as Tier I capital.  Id.  Until the end of the phase-in period on January 1, 2016, they will be allowed to treat at least some of the securities as Tier I capital.  Id.  Notably, the phase-in period of the new requirement would begin after the optional redemption date for these securities passed on December 15, 2012.  Id. at ¶ 29.

4

On September 1, 2011, Defendant announced that it would redeem the Capital Trust X securities on October 3, 2011. <u>Id.</u> at ¶ 27. Defendant stated that it "has determined that a Capital Treatment Event occurred with the passage of the Dodd-Frank Wall Street Reform and Consumer Protection Act." Form 8-K, RJN Ex. 7 at 418. At that time, Defendant reported that the principal amount of the securities was $837.5 million, at twenty-five dollars per share, or 33.5 million shares. <u>Id.</u> On October 3, 2011, Defendant redeemed the outstanding securities. Compl. ¶ 29.

Plaintiff filed the instant action on December 20, 2011. Docket No. 1. Plaintiff seeks to prosecute it on behalf of itself and all holders of the Capital Trust X securities on October 3, 2011. Compl. ¶ 34. Plaintiff charges Defendant with breach of contract and breach of the implied covenant of good faith and fair dealing for redeeming the Capital Trust X securities on October 3, 2011, before Defendant's optional redemption date of December 15, 2012. <u>Id.</u> at ¶¶ 41-61. Plaintiff alleges that it and the class members have been damaged in the amount of $79.7 million, the amount of dividend payments that 33.5 million shares would have earned between October 3, 2011 and December 15, 2012. <u>Id.</u> at ¶¶ 36, 50, 61.

On April 12, 2012, the Court issued an order granting Defendant's motion to dismiss in a related case, <u>Call v. Wells Fargo & Co.</u>, Case No. 11-5215, 2012 U.S. Dist. LEXIS 51731 (N.D. Cal.). In that case, the plaintiff, Daniel Call, brought claims against Defendant arising from its redemption of other similar securities, Defendant's Capital XIV 8.625% Enhanced Trust Preferred Securities, simultaneously with the redemption of the

securities at issue in this action.  Defendant's action in that case was also based on its determination that the Dodd-Frank Act constituted a capital treatment event.  The parties agree that the governing documents, including the capital treatment event clause, for the securities at issue in Call are materially identical to those for the securities here, and that the only relevant difference is that Defendant's optional redemption date in Call was September 15, 2013, after the start of the phase-in period for the Dodd-Frank Act on January 1, 2013.

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile.

United States District Court
For the Northern District of California

6

Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911
F.2d 242, 246-47 (9th Cir. 1990).   In determining whether
amendment would be futile, the court examines whether the
complaint could be amended to cure the defect requiring dismissal
"without contradicting any of the allegations of [the] original
complaint."   Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th
Cir. 1990).

DISCUSSION

Defendant argues that Plaintiff's complaint should be
dismissed, because it did not breach the contract as a matter of
law and because exercising contractual rights cannot be a breach
of the implied covenant of good faith and fair dealing.   Defendant
also argues that Plaintiff lacks standing to sue.

I.   Breach of Contract

The parties dispute whether Defendant could have reasonably
determined that the enactment of the Dodd-Frank Act constituted a
capital treatment event, even though it would not affect
Defendant's ability to treat any of the securities as Tier I
capital until after the optional redemption date had passed.

Defendant contends that the definition of a capital treatment
event in the Indenture does not limit such an event to those that
will actually go into effect before the optional redemption date.
Although Plaintiff agrees that the clause contains forward-looking
language and that Defendant may declare a capital treatment event
based on a change that will take effect in the future, it argues
that the clause cannot reasonably be read to include events that
will only occur after the optional redemption date, because such a
reading would not comport with the clear purpose of the clause in

United States District Court
For the Northern District of California

the context of the agreement as a whole.  Plaintiff asserts that, in the alternative, the capital treatment event clause is ambiguous, because it fails to state in definite and precise terms when the threatened loss of Tier I status must occur to trigger its effects.

New York law governs the application of the capital treatment event clause, which is located in the Indenture.  "Under New York law, 'the fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent.'"  Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co., 375 F.3d 168, 177 (2d Cir. 2004) (quoting Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569 (2002)).  "Typically, the best evidence of intent is the contract itself; if an agreement is 'complete, clear and unambiguous on its face[, it] must be enforced according to the plain meaning of its terms.'"  Id. (quoting Greenfield, 98 N.Y.2d at 569) (formatting in original).

"Ambiguity is determined by looking within the four corners of the document, not to outside sources."  Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P., 13 N.Y.3d 398, 404 (2009) (quoting Kass v. Kass, 91 N.Y.2d 554, 566 (1998)).  "The language of a contract is not made ambiguous simply because the parties urge different interpretations."  Seiden Associates, Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992).  "Whether or not a writing is ambiguous is a question of law to be resolved by the courts."  Eternity Global Master Fund Ltd., 375 F.3d at 178 (quoting W.W.W. Assoc., Inc. v. Giancontieri, 77 N.Y.2d 157, 162 (1990)).

United States District Court
For the Northern District of California

Plaintiff argues that the capital treatment event clause can be invoked only if the prospective change in the treatment of the securities as Tier I capital could be reasonably anticipated to have its effect before December 15, 2012.  However, neither the plain language of the capital treatment event clause, nor the contract as a whole, contains such a temporal limitation.  The definition of a capital treatment event does not refer to December 15, 2012 or the optional redemption date generally, or otherwise state that the event must take effect before any date.

Plaintiff argues that the trust documents "stress the interplay between the December 15, 2012 optional redemption date and the possibility of an earlier redemption based on the occurrence of certain events, such as a 'tax event' or 'capital treatment event.'"  Opp. at 9.  However, the reference to which it points reinforces that these are independent events and dates.  In explaining the various points at which a redemption can occur, the documents use the conjunction "or" between the December 15, 2012 date and other events such as "tax event" or "capital treatment event," not the conjunction "and."  Prospectus, RJN, Ex. 3 at 204 ("At Wachovia's option, the Trust Preferred securities may be redeemed at 100% of their liquidation amount on or after December 15, 2012 or after the occurrence of tax event, capital treatment event or investment company event as described herein . . ."); see also Fourth Supplemental Indenture, RJN, Ex. 5 at 330 (using "or").  In other places, the documents name these separately in lists, in different bullet points or numbers.  See, e.g., Fourth

**United States District Court**
For the Northern District of California

1   Supplemental Indenture, RJN, Ex. 5 at 338 (numbered list);

2   Prospectus, RJN, Ex. 3 at 254 (bulleted list).

3       Other parts of the documents demonstrate that Defendant,

4   which drafted them, knew how to include language that would limit

5   the time within which a capital treatment event must take place,

6   if such a limitation had been intended.  In the Base Indenture, a

7   "tax event" was defined to mean

8           the receipt by Wachovia Trust of an opinion of counsel
9           experienced in such matters to the effect that as result
            of any amendment to or change (including any announced
10          prospective change) in, the laws or any regulations
            thereunder of the United States or any political
11          subdivision or taxing authority thereof or therein, or
            as a result of any official administrative pronouncement
12          or judicial decision interpreting or applying such laws
            or regulations, which amendment or change is effective
13          or which pronouncement or decision is announced on or
            after the date of issuance of the Trust Preferred
14          Securities of such Wachovia Trust, there is more than an
            insubstantial risk that (i) such Wachovia Trust <u>is, or</u>
15          <u>will be within 90 days of the date of such Opinion of</u>
            <u>Counsel</u>, subject to U.S federal income tax with respect
16          to income received or accrued on the corresponding
            series of Securities issued by the Company to such
17          Wachovia Trust, (ii) interest payable by the Company on
            such corresponding series of Securities <u>is not, or</u>
18          <u>within 90 days of the date of such Opinion of Counsel,</u>
            <u>will not be,</u> deductible by the Company in whole or in
19          part for U.S federal income tax purposes or (iii) such
            Wachovia Trust <u>is, or will be within 90 days of the date</u>
20          <u>of such Opinion of Counsel</u>, subject to more than <u>de</u>
            <u>minimis</u> amount of other taxes duties or other
21          governmental charges.

22  Base Indenture, RJN, Ex. 1 at 18 (emphasis added).  In contrast,

23  the definition for capital treatment event used the future-looking

24  word "will" without a corresponding temporal limitation as to when

25  the change must take place.

26      In fact, a different temporal limitation that otherwise would

27  have applied to capital treatment events was removed deliberately

28  for these securities.  The Base Indenture, section 11.7,

restricted Defendant to using the capital treatment event clause "within 90 days following the occurrence of such" event.  Base Indenture, RJN, Ex. 1 at 67.  The Fourth Supplemental Indenture specifically provides that "Section 11.7 of the Indenture shall not apply" to these securities.  Fourth Supplemental Indenture, RJN, Ex. 5 at 330.

Contrary to Plaintiff's suggestion, the fact that Defendant omitted a temporal limitation in the definition for a capital treatment event, without affirmatively stating that no such limitation was intended, does not make the clause ambiguous.  See, e.g., Greenfield, 98 N.Y.2d at 573 (the "suggestion that the failure of a contract to address certain categories of royalties allows a court to look beyond the four corners of the document to discern the parties' true intent conflicts with our established precedent that silence does not equate to contractual ambiguity") (citing Trustees of Freeholders & Commonalty of Town of Southampton v. Jessup, 173 N.Y. 84, 90 (1903) ("an ambiguity never arises out of what was not written at all, but only out of what was written so blindly and imperfectly that its meaning is doubtful")).  This is especially true here, where a temporal limitation was included in a similar clause but was omitted in this one.

Plaintiff contends that the capital treatment event clause should be read to allow redemption only if such an event has taken effect before December 15, 2012, because after the optional redemption date has passed, Defendant can redeem the securities for any reason and does not need to rely on the occurrence of a capital treatment event, rendering that clause superfluous.

11

Plaintiff states that this understanding would comport with the purposes of the clause in relationship to the agreement as a whole, by protecting the benefit of the bargain for putative class members, who had purchased the securities with the understanding that they would be able to receive a favorable interest rate at least until December 15, 2012. However, the language of the contract makes clear that this benefit was not absolute and was instead contingent upon certain conditions, including that a capital treatment event not occur and that, should one occur, Defendant not exercise its right to redemption. Further, the clear purpose of the forward-looking language in the capital treatment event clause is to allow Defendant the flexibility to redeem the securities before the prospective change affecting the favorable treatment of those securities has actually taken effect, in order to anticipate the change in a manner that it deems to make good business sense and ensure adequate capitalization, rather than requiring it to redeem the securities en masse at the moment the change takes effect or on the optional redemption date, if sooner. To require Defendant to wait until the optional redemption date to redeem the securities, even though it knew that, shortly thereafter, it would lose the ability to treat as Tier I capital the liquidation amount of the securities, thus does not comport with the purpose of this clause in relation to the documents as a whole.

Further, under the definition of capital treatment event, Defendant was required only to make a "reasonable determination" that the triggering conditions had occurred; Defendant was not required to be correct in its determination. Under the

allegations of the complaint, Defendant's determination was reasonable, because the enactment of the Dodd-Frank Act into law meant that Defendant would not be able to treat an amount of the securities equal to the liquidation amount as Tier I capital.

Without reading a temporal limitation into the capital treatment event clause, Plaintiff has failed to state a claim against Defendant for breach of contract, and the Court GRANTS Defendant's motion to dismiss this claim.  Because no amendment can cure these deficiencies without contradicting the terms of the governing contracts, dismissal is without leave to amend.

II.  Breach of Covenant of Good Faith and Fair Dealing

New York law implies a covenant of good faith and fair dealing "pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 407 (2d Cir. 2006) (citation omitted).

Defendant argues that Plaintiff's claim should be dismissed because it attacks Defendant's exercise of an express provision of the agreement.  Plaintiff responds that investors "reasonably understood" the capital treatment event clause "to be limited to changes or proposed changes of law that threatened to use the Capital X TruPS as Tier 1 capital prior to December 15, 2012." Opp. at 14.  However, the covenant "can only impose an obligation consistent with other mutually agreed upon terms in the contract. It does not add to the contract a substantive provision not included by the parties." Broder v. Cablevision Sys. Corp., 418 F.3d 187, 198-99 (2d Cir. 2005) (citation omitted).  As already

United States District Court
For the Northern District of California

addressed above, Plaintiff's interpretation would add to the contract an additional temporal limitation on the use of the capital treatment event clause that is not otherwise included in any of the document governing the securities.

Further, this claim is redundant of Plaintiff's breach of contract claim and New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when the claim is based on the same allegations as a breach of contract claim.  See Serdarevic v. Centex Homes, LLC, 760 F. Supp. 2d 322, 334 (S.D.N.Y. 2010) ("A claim for breach of the implied covenant [of good faith and fair dealing] will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of a covenant of an express provision of the underlying contract.").

Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's claim alleging breach of the covenant of good faith and fair dealing.  Because no amendment can cure these deficiencies without contradicting the terms of the governing documents for the securities, dismissal is without leave to amend.

Because the Court dismisses both of Plaintiff's claims, it does not reach Defendant's argument that Plaintiff lacks standing to bring these claims.

United States District Court
For the Northern District of California

14

CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant's motion to dismiss (Docket No. 26).

The Clerk shall enter judgment and close the file.  Defendant shall recover its costs from Plaintiff.

IT IS SO ORDERED.

Dated: 7/2/2012

CLAUDIA WILKEN
United States District Judge